IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

COMPSOURCE OKLAHOMA, )
individually and on behalf )
of all others similarly )
situated, )
)
Plaintiff, )
)
v. ) Case No. CIV-08-469-KEW
)
BNY MELLON, N.A. and )
THE BANK OF NEW YORK )
MELLON CORPORATION, )
)
Defendants. )

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on Defendants' Motion to Dismiss Complaint Pursuant to Rules 12(b)(2) and 12(b)(6) F.R.C.P. (Docket Entry #35). After the granting of an extension to do so, Plaintiff has responded and Defendants have replied. Also coming on for consideration at this time are Plaintiff's Motion to Lift Discovery Stay and Plaintiff's Motion for Entry of Protective Order (Docket Entry Nos. 74 and 75, respectively). Upon review of the filings of the parties, this Court renders this ruling.

Plaintiff, a workers' compensation insurance company, commenced this putative class action in this District on December 19, 2008. Plaintiff alleges it and other members of the proposed class entered into a securities lending agreement with Defendant BNY Mellon, N.A. ("BNY")[1], which took certain securities owned by

---

1 An additional Defendant named in the original Complaint, The Bank of New York Mellon Corporation, was dismissed from this action by

the Putative Class and lent them to third parties in return for cash collateral in an amount that exceeded the value of the securities loaned. BNY's compensation was allegedly set as a percentage of the revenues generated for each class member.

Plaintiff alleges the securities lending agreement required BNY to *inter alia*, "(a) safeguard principal, (b) maintain adequate liquidity, and (c) discharge its duties with respect to the investment of the collateral with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

BNY allegedly invested a portion of the cash collateral in medium term notes issued by Sigma Finance, Inc., an entity which subsequently entered receivership. The medium term notes were allegedly secured with a "floating lien" on Sigma's assets, subject to subordination to the lien interests of Sigma's other creditors.

Plaintiff contends that market analysts warned entities such as Sigma lacked liquidity in the credit market and sharp declines in the market value of assets backing the securities threatened their viability. Plaintiff states in the Complaint that analysts predicted Sigma would not be able to repay the medium term notes BNY purchased for Plaintiff and other putative class members upon

---

Plaintiff by Notice filed March 3, 2009.

maturity of the instruments. Tale tell signs of Sigma's problems continued in the market but, Plaintiff alleges, BNY refused to sell the medium term notes. Ultimately, Plaintiff asserts Sigma's assets were seized.

Plaintiff's first count alleges a breach of the fiduciary duty owed by BNY to Plaintiff and other class members "by virtue of the terms of the Securities Lending Agreements and/or the nature of their relationship with Plaintiff and all other Class Members." The specifics of the breach include (1) failing to properly investigate Sigma's medium term notes which would have revealed an unacceptable level of risk; (2) imprudently investing the collateral in the Sigma medium term notes, the act of which did not conform with the investment guidelines between the parties; (3) imprudently failing to monitor the investment in the Sigma medium term notes; and (4) imprudently maintaining the investment in the Sigma medium term notes despite the presence and BNY's awareness of analysts' warnings concerning Sigma.

Plaintiff's second asserted claim is based in negligence. Plaintiff contends BNY owed it and the other class members a "duty of ordinary care and skill to act as to not cause harm to another." This duty also is alleged to arise from the terms of the Securities Lending Agreements and the nature of the relationship between Plaintiff and the class members and BNY. The breaches alleged giving rise to a claim of negligence track precisely with those

alleged to give rise to a claim of breach of fiduciary duty.

Plaintiff's third cause of action alleges a breach of the contract represented in the Securities Lending Agreements. These Agreements, it is alleged, required *inter alia*, (1) compliance with the Investment Guidelines (as established in the Securities Lending Agreements); (2) BNY to prudently discharge their fiduciary duties to Plaintiff and the other class members; (3) BNY to act "non-negligently" in regard to Plaintiff and the other class members; and (4) BNY to assume liability for losses resulting from BNY's negligence in attending the Securities Lending Program.

In its Motion[2], BNY contends Plaintiff's breach of fiduciary duty and negligence claims should be dismissed due to the application of the economic loss rule. Under Oklahoma law, the economic loss rule found its genesis in products liability law. When a party's loss is purely economic and does not entail personal or property damage, such losses have traditionally not been protected by application of tort law. Waggoner v. Town & Country Mobile Homes, Inc., 808 P.2d 649, 653 (Okla. 1990). Outside of the jurisprudence of Oklahoma, the economic loss rule has been expanded beyond products liability law to represent a general doctrine that where a plaintiff asserts claims resulting in a purely economic

---

2 In actuality, considerable space and attention was devoted in the Motion to the question of whether this Court could exercise personal jurisdiction over the former Defendant, The Bank of New York Mellon Corporation – an issue resolved by Plaintiff's voluntary dismissal of that Defendant.

loss arising from a contract between the parties, the plaintiff cannot also bring negligence and other tort claims for the same loss. *See e.g.*, Town of Alma v. Azco Const., Inc., 10 P.3d 1256, 1264-66 (Colo. 2000).

This Court is troubled by the application of the economic loss rule in this case on multiple fronts. No authority has been cited from a court in Oklahoma specifically adopting the economic loss rule outside of the products liability arena. BNY cites to the cases from the Tenth Circuit Court of Appeals referencing various Oklahoma state court authority which stand for the proposition that if a claim for breach of fiduciary duty arises from a contract, the plaintiff must elect to bring a claim under **either** contract or tort. Combs v. Shelter Mutual Ins. Co., 551 F.3d 991, 1001 (10th Cir. 2008); Quinlan v. Koch Oil Co., 25 F.3d 936, 943 (10th Cir. 1994). This position does not evince an endorsement or adoption of the economic loss rule in Oklahoma in instances other than cases involving products liability. In contrast to the opinion of the Honorable Ronald A. White cited by BNY, this Court is not prepared to conclude Oklahoma would adopt the economic loss rule in the context of this case. *See*, Tulsa Propulsion Engines, Inc. v. Honeywell Internat'l, Inc., 2007 WL 4345207 (E.D. Okla.).

Moreover, in all such cases, the duty, whether it be based upon a relationship such as a fiduciary or in simple negligence, must arise from the contract at issue in order to be limited to a

5

contract claim. *See,* Quinlan, 25 F.3d at 943 citing Panama Processes, S.A. v. Cities Service Co., 796 P.2d 276, 289 n.55 (Okla. 1990) and Hall Jones Oil Corp. v. Claro, 459 P.2d 858, 861-62 (Okla. 1969)("Under Oklahoma law, however, an action for breach of fiduciary duty **arises from contract** can be based either on tort or contract.") In its Complaint, Plaintiff specifically alleges the BNY's fiduciary and ordinary duties arise "by virtue of the terms of the Securities Lending Agreements and/or the nature of their relationship with Plaintiff and all other Class Members." BNY seeks to have this Court determine that the totality of its obligations to Plaintiff and any putative class members arise from the Securities Lending Agreements. Plaintiff has also cited to various authority in Oklahoma and common law establishing a fiduciary duty imposed by law by one exercising control over another's investment assets. It is simply too early in this litigation to make a definitive finding that BNY's obligations to Plaintiff were established exclusively through the Securities Lending Agreement and not through other representation. Plaintiff may, however, at a later stage of this litigation be required to elect between its breach of contract claim or its breach of fiduciary duty and negligence claims, if it is shown through the evidence that BNY's duties, if any, arise solely from the Agreement between the parties.

BNY next contends the Securities Lending Agreement itself bars

6

Plaintiff's breach of fiduciary duty claim. BNY states the Agreement absolves it of liability for economic losses arising from the Securities Lending Program, except for losses caused by negligence or willful misconduct. This, of course, begs the question, since Plaintiff has alleged negligence on the part of BNY in the handling of the investment. Plaintiff also seeks to have the exculpatory provision of the Securities Lending Agreement to be deemed void as against public policy, contending it is contrary to Oklahoma law. The briefing and factual record is deficient for such a ruling at this time.

Exculpatory clauses are enforceable in Oklahoma so long as (1) the terms are set forth in clear, definite and unambiguous language; (2) the exculpation is agreed to in an arm's length transaction with no vast bargaining power between the parties; and (3) the exculpation is not contrary to statute or public policy. Schmidt v. United States, 912 P.2d 871, 874 (Okla. 1996). Clearly, the Agreement contemplates the recovery of damages as a result of negligence or the commission of an intentional wrongful act. However, it has not yet been established whether factually a fiduciary relationship exists between the parties as a result of conduct rather than simply the contract. Therefore, the application of the Oklahoma statutes cited by Plaintiff which purport to create an independent fiduciary duty may or may not give rise to a statutory statement of policy contradicted by the

Agreement. For example, Okla. Stat. tit. 85 § 138.2(D)(1) cited by Plaintiff may have applicability depending upon whether BNY exercised "discretionary authority or discretionary control respecting management of the State Insurance Fund" or its assets. The nature and extent of the control exercised by BNY over Plaintiff's assets requires some development of the factual record. At this early stage of the litigation without the benefit of discovery concerning the course of business between the parties, it would be imprudent to void the exculpatory portion of the Agreement.

As is evident from this Court's examination of this somewhat preliminary Motion, the time to commence discovery in this case is at hand. The parties may exchange the initial disclosures forthwith and the Court will set a further telephonic Scheduling Conference.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Complaint Pursuant to Rules 12(b)(2) and 12(b)(6) F.R.C.P. (Docket Entry #35) is deemed **MOOT**, insofar as it seeks the dismissal of the former Defendant The Bank of New York Mellon Corporation. The remainder of the Motion is hereby **DENIED** at this time.

IT IS FURTHER ORDERED that the parties shall make their initial disclosures under Fed. R. Civ. P. 26(a) within fourteen (14) days after the entry of this Opinion and Order. A further telephonic Scheduling Conference will be set by separate notice.

IT IS FURTHER ORDERED that Plaintiff's Motion to Lift Discovery Stay (Docket Entry #74) is hereby **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Entry of Protective Order (Docket Entry #75) is hereby **DENIED** at this time to permit counsel to consult and arrive at a mutually agreeable protective order to submit to the Court for signature, if they deem it necessary that one be entered.

IT IS SO ORDERED this **31st** day of July, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE