IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

COMPSOURCE OKLAHOMA; and )
BOARD OF TRUSTEES OF THE )
ELECTRICAL WORKERS LOCAL )
NO. 26 PENSION TRUST FUND, )
in its capacity as a fiduciary )
of the Electrical Workers )
Local No. 26 Pension Trust )
Fund, on behalf of themselves )
all others similarly )
situated, )
 )
          Plaintiffs, )
 )
v. )      Case No. CIV-08-469-KEW
 )
BNY MELLON, N.A. and )
THE BANK OF NEW YORK )
MELLON, )
 )
          Defendants. )

**OPINION AND ORDER**

This matter comes before the Court on Plaintiffs' Expedited Motion for Relief for Violations of Stipulation No. 1 filed August 20, 2010 (Docket Entry #176). On Plaintiffs' request, this Court conducted a hearing on the Motion on September 15, 2010. Counsel for all parties were in attendance.

At the heart of the matter, the problems encompassed by the subject Motion arise primarily from a lack of communication and the inherent distrust which arises from actions which are taken without communicating. Defendants BNY Mellon, N.A. and The Bank of New York Mellon (collectively referred to herein as "BNY") maintains a business relationship with its clients - most, if not all, of whom are either Plaintiffs to this action or putative class members. Communications between BNY and its clients included the status of

the Sigma Fund which forms the subject matter of this action.

These communications with the clients, generally, and Plaintiff CompSource Oklahoma and later Plaintiff Board of Trustees of the Electrical Workers Local No. 26 Pension Trust Fund (collectively referred to as "Plaintiffs"), specifically, prompted CompSource to file a document entitled "Motion for Relief Pursuant to Federal Rules of Civil Procedure 23(d)" on October 27, 2009. The particular communication which precipitated this filing was a request by BNY for CompSource to remit the funds allegedly due under their investment agreement arising from the losses sustained by the Sigma Fund.

The parties negotiated a filing entitled "Stipulation No. 1" on December 10, 2009, a term of which was the withdrawal of CompSource's Motion for Relief. Among the various terms agreed upon by the parties was a requirement that BNY provide CompSource's counsel with a copy of any written correspondence to any putative class member concerning the Sigma deficiencies and any other matter related to this litigation within five (5) business days of transmitting the correspondence, together with a list of the names and addresses of the putative class members who received the correspondence.

Plaintiffs allege BNY violated this Stipulation No. 1 on several occasions. On June 29, 2010, BNY transmitted correspondence to presumed putative class members, providing an update to the status of the Sigma Fund which is in receivership in

Europe. The correspondence was in the form of an e-mail and informed its clients that the Sigma Receivers were proposing a pooling and distribution method for the remaining Sigma assets. The e-mail also informed the clients that a conference call would be held with the Sigma Receivers, their advisors, and Sigma beneficiaries on July 7, 2010. Plaintiffs contend BNY did not provide a copy of the e-mail until July 8, 2010, seven (7) days after it was transmitted to the putative class/client base and one day after the conference call took place. BNY also failed to inform Plaintiffs' counsel of the names and addresses of the recipients.

The next violation of the Stipulation allegedly occurred on July 6, 2010, when BNY informed their clients that the conference call was scheduled for July 7, 2010. Again, this communication was in the form of an e-mail and provided contact information and the purpose of the call. BNY did provide a transcript of the conference call to Plaintiffs' counsel on July 15, 2010.

Plaintiffs also contend that on August 10, 2010, BNY sent a letter to Plaintiffs' counsel, addressed to CompSource and dated August 5, 2010. BNY also sent a letter directly to the Board of Trustees, a named Plaintiff in this action. The letter was also sent to putative class members. Plaintiffs assert BNY failed to notify counsel of the transmission and provide a list of those putative class members who received the communication within five (5) days of its transmission.

The August 5, 2010 communication addressed the proposed distribution by Sigma Receivers from Sigma assets. Plaintiffs contend this was the very matter discussed in the July 7, 2010 conference call. More importantly to this case, the letter also informed recipients that BNY had retained IFS, an admittedly well-known and respected fiduciary services firm. Plaintiffs contend IFS would be known to putative class members, who are generally sophisticated investors, and would have an ongoing relationship with many of the members. The purpose for IFS' retention was to evaluate potential claims arising from the Sigma investments. The entities against whom potential claims might be investigated would not, however, include BNY.

Plaintiffs object primarily to the substance of this communication. They believe the letter to be an attempt to influence putative class members in their potential participation in this litigation by appearing to employ an independent concern, IFS, to evaluate claims which might be a part of this potential class action while paying IFS and providing it with selected information for an allegedly unbiased report to investors.

Plaintiffs also contend BNY informed them of an August 11, 2010 communication from BNY to putative class members concerning the Sigma receivership. Plaintiffs' counsel did not receive the transmission until August 20, 2010, seven (7) days after it was sent to putative class members.

BNY's counsel admits the June 29, 2010 and August 11, 2010 e-

mails were not transmitted to Plaintiffs' counsel within the time frame of required by Stipulation No. 1, characterizing it as inadvertent. They argue, however, that the delay caused no prejudice to Plaintiffs because they were informed of the content of the conference call and can communicate with both the Sigma receivers and putative class members. BNY also contends the Board of Trustees, which was not a named Plaintiff in this case at that time, received notice of the conference call.

As a result of the alleged violations of Stipulation No. 1, Plaintiffs propose various checks to be placed upon BNY's communications with putative class members. The relief requested in this unique proposal is both extraordinary and, to some extent, onerous. This Court will address each proposal in turn.

▸ **Appointment of a Special Master to Oversee BNY's Communications with Putative Class Members –**

Plaintiffs first propose that a special master be appointed to address any improper communications by BNY with the putative class members, with BNY to bear the cost of the appointment. Clearly, a special master may be employed to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). Special masters have been recognized to "occup[y] a special place in court proceedings" who is "more than an advisor or facilitator for the court" but rather actually performs "judicial functions." Rohrbough v. Harris, 549 F.3d 1313, 1318 (10th Cir. 2008).

The proposal for a special master in this case is a bit more ethereal. Plaintiffs seek the special master's services to review correspondence which might touch upon this litigation before it is transmitted to BNY's clients, which include putative class members. The proposed extent of the special master's powers to affect those communications is less clear. It is agreed by the parties that BNY has a continuing business relationship with its clients who lost money in investing in the Sigma Fund, including Plaintiffs. As with any business relationship, those entities had the ability to cease doing business with BNY but apparently made a business decision not to do so. As a part of that continuing business relationship, it is further agreed that BNY must communicate with its clients. Any appointment of a special master to oversee communications at this time, before a class action has been certified, is ill-advised as representing an extraordinary measure which may adversely affect BNY's ability to conduct its business.

As discussed at the hearing, BNY's counsel has taken steps to insure that Plaintiffs' counsel receives all future communications before it is required by Stipulation No. 1 by including counsel on the e-mail address list with all of its affected clients. The addition of counsel to this list will also alleviate any professional responsibility concerns with direct communication with Plaintiffs' counsels' clients. This Court is confident that the few communications which might relate to this litigation will be monitored by Plaintiffs' counsel for content and any improprieties

will be brought before this Court in a timely fashion. This Court is in a position to "effectively and timely" address any such contentions without assistance at this time. Should this change or the communications become overwhelming in number, this Court will revisit the appointment of a special master and its associated costs.

▸ **Class-wide Notice to Putative Class Members**

Plaintiffs next request that this Court issue a notice to putative class members, informing them of the status of this litigation, the appointment of Interim Class Counsel (Plaintiffs' counsel), the requirements of Stipulation No. 1, and providing each putative class member with a copy of the First Amended Complaint. Pre-certification notice to putative class members is left to the discretion of the court. In re Integra Realty Resources, Inc., 262 F.3d 1089, 1109 (10th Cir. 2001)(citations omitted). The pre-certification notice to which this and many other cases is directed, however, is that required for due process requirements prior to class certification in order to permit a potential class member to state their position as to certification.

The pre-certification notice proposed by Plaintiffs in this case would involve informing putative class members of the existence of the lawsuit and Plaintiffs' *allegations* against BNY and not simply informing them of the consideration of class certification. This Court perceives little utility in a court-issued notice to potential class members at this time. BNY's

counsel's concerns that a notice from the court might take on more weight than intended with recipients of the notice is shared by this Court. Additionally, the record before the Court at this time does not include a showing of significant ignorance of the existence of this lawsuit by putative class members. Therefore, a pre-certification notice will not be issued at this time.

This ruling is made with a condition and a warning. If BNY is perceived by this Court at any time as attempting to improperly influence its clients and putative class members in this case to forego participation in this action, this Court will entertain the request for the extraordinary measure of issuing a notice to putative class at BNY's expense. While the retention of IFS borders upon this type of conduct, BNY has sufficiently explained the necessity to obtain a report of the advisability of an action against third parties with potential liability within the statute of limitations period. Any influence this conduct may bear upon putative class members, however, may be cured through an appropriate notice when class certification is considered.

Providing a copy of the First Amended Complaint to putative class members, while tempting at first blush, is somewhat problematic. Plaintiffs filed the First Amended Complaint in order to add an additional class representative, add an additional party defendant, and add additional detail to the allegations contained in the original Complaint. It is this latter detail that caused the First Amended Complaint to be sealed upon the designation by

8

BNY that it contained confidential information. Plaintiffs were in control of the content of the First Amended Complaint which predictably drew the confidential designation from BNY. This does not mean that the designations were appropriate. As a result, distribution of the sealed First Amended Complaint will not be ordered at this time. However, prior to the issuance of any notice in consideration of class certification, Plaintiffs may file a motion for this Court to consider whether the First Amended Complaint contains confidential information worthy of redaction or unsealing, as the case may be.

Generally as pointed out at the hearing, Plaintiffs' counsel is, of course, free to communicate with whomever they choose. This Court recognizes the potential pitfalls that may exist with any such communication, but such is the tenuous nature of the status of this case at this time.

- **Prohibit IFS and BNY from Taking Action on Behalf of or Contacting Any Absent Class Member Unless Class Counsel is Involved in the Communications**

Adding Plaintiffs' counsel to the e-mail listing should provide counsel with the notice required to insure whatever "action" is contemplated by this request is precluded. This Court is unsure of any action that IFS could take in this regard but, again, any communication should flow through BNY and not directly from IFS so that Plaintiffs' counsel is aware of all communications with putative class members and Plaintiffs.

▸ **Allow Immediate Rule 30(b)(6) Deposition Under Court Supervision**

It is the understanding of the Court that this deposition has taken place by agreement of the parties without court intervention.

IT IS THEREFORE ORDERED that Plaintiffs' Expedited Motion for Relief for Violations of Stipulation No. 1 filed August 20, 2010 (Docket Entry #176) is **DENIED** under the terms and conditions set forth herein.

IT IS SO ORDERED this 22nd day of October, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE