**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| COMPSOURCE OKLAHOMA, | § | |
| BOARD OF TRUSTEES OF THE | § | |
| ELECTRICAL WORKERS LOCAL | § | |
| NO. 26 PENSION TRUST FUND, | § | |
| in its capacity as a fiduciary of the | § | |
| Electrical Workers Local No. 26 | § | |
| Pension Trust Fund, CHILDREN'S | § | |
| HOSPITAL OF PHILADELPHIA | § | |
| FOUNDATION, and CHILDREN'S | § | |
| HOSPITAL OF PHILADELPHIA, | § | |
| individually and in its capacity as fiduciary | § | |
| of the Children's Hospital of Philadelphia | § | |
| Defined Benefit Master Trust, on behalf of | § | |
| themselves and all others | § | |
| similarly situated, | § | |
| | § | |
| *Plaintiffs*, | § | Case No: CIV 08-469-KEW |
| | § | |
| v. | § | |
| | § | |
| BNY MELLON, N.A. and | § | |
| THE BANK OF NEW YORK MELLON, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFFS'**
**UNOPPOSED MOTION TO PRELIMINARILY APPROVE**
**SETTLEMENT, APPROVING FORM AND MANNER OF NOTICE**
**AND SETTING FINAL FAIRNESS HEARING DATE**

**I.    INTRODUCTION**

Named Plaintiffs CompSource Oklahoma ("CompSource"), Board of Trustees of the

Electrical Workers Local No. 26 Pension Trust Fund (the "Board"), The Children's Hospital of

Philadelphia Foundation (the "CHOP Foundation"), and The Children's Hospital of Philadelphia,

individually and in its capacity as fiduciary of The Children's Hospital of Philadelphia Defined

Benefit Master Trust (hereinafter the "CHOP Trust" and, together with the CHOP Foundation,

"CHOP") (collectively "Named Plaintiffs") have achieved an outstanding recovery for the Class as a result of their vigorous prosecution of this Action.[1]  Specifically, Named Plaintiffs have reached a settlement with Defendants BNY Mellon, N.A. and The Bank of New York Mellon (collectively, "Defendants" or "BNY Mellon") for a total cash payment of $280,000,000 ("Settlement Amount") pursuant to the terms set forth in the Stipulation of Settlement dated July 5, 2012 ("Settlement" or "Stipulation"), attached hereto as Exhibit 1.

The Settlement is the result of well-informed and extensive arm's-length negotiations between and among highly experienced counsel and facilitated by the Honorable Layn Phillips, a highly qualified mediator and former Oklahoma Federal Judge and United States Attorney. Named Plaintiffs and Interim Class Counsel believe the Settlement is fair, reasonable, and adequate and should be preliminarily approved.  Accordingly, and for the reasons set for below, Named Plaintiffs respectfully request the Court enter the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), a copy of which is attached to the Stipulation as Exhibit A.

The Preliminary Approval Order will, *inter alia*: (1) preliminarily approve the proposed Settlement; (2) preliminarily certify the Class for settlement purposes only; (3) appoint Named Plaintiffs as Class Representatives; (4) appoint Nix, Patterson & Roach, LLP ("NPR") and Kessler, Topaz, Meltzer & Check, LLP ("KTMC") as Class Counsel; (5) approve the form and manner of the Notice proposed by Named Plaintiffs; (6) appoint a Settlement Administrator and an Escrow Agent; and (7) set a hearing date for final approval of the Settlement and application

---

[1] All capitalized terms not otherwise defined herein shall have the meaning given to them in the July 5, 2012 Stipulation of Settlement, a copy of which is attached hereto as Exhibit 1.

for an award of attorneys' fees, reimbursement of expenses, and Case Contribution Awards to the Named Plaintiffs.

## II.        SUMMARY OF THE LITIGATION

This litigation has been hard fought for three and a half years.  Fact discovery is complete.  Only final summary judgment briefing and certain expert discovery remain to be completed before trial.  During discovery, the Settling Parties produced and/or reviewed nearly five million pages of documents: Defendants produced 4,625,451 pages, Named Plaintiffs 286,436 pages, and third parties approximately 52,000 pages.  The Settling Parties' counsel took or defended a total of 59 depositions, 12 of which continued over multiple days.  These depositions took place in seven different states across the country—New York, Texas, California, Maryland, Oklahoma, Pennsylvania, and Missouri—and resulted in 16,483 pages of recorded testimony with 1,738 exhibits.  On June 30, 2011, all fact discovery (*i.e.*, non-expert discovery) related to both class certification and merits issues closed in this case.  Based upon Plaintiffs' Counsels' work in this case over the past three and one half years, Named Plaintiffs and Interim Class Counsel believe the Settlement is fair and reasonable and should be approved.

Plaintiff CompSource initiated this action on December 19, 2008, with the filing of the Class Action Complaint against BNY Mellon, N.A. and The Bank of New York Mellon Corporation, asserting claims for breach of contract, negligence and breach of fiduciary duty for losses suffered in the securities lending program operated by Defendants when Sigma Finance Inc. and Sigma Finance Corp. defaulted.

On January 30, 2009, Defendants filed (i) a Motion to Dismiss the Complaint Pursuant to Rule 12(b)(2) and 12(b)(6), and (ii) a Motion to Transfer Venue to the Western District of Pennsylvania Pursuant to 28 U.S.C. § 1404(a).  On July 31, 2009, after oppositions and replies,

the Court denied BNYM's Motion for Dismissal and, on April 28, 2009, the Court denied BNYM's Motion to Transfer.

On March 12, 2009, CompSource filed a Motion to Appoint NPR Interim Counsel Pursuant to Federal Rule of Civil Procedure 23(g)(3), which was granted on March 13, 2009. On February 1, 2010, BNY Mellon, N.A. filed a Motion for Summary Judgment Based on Plaintiff's Lack of Capacity to Sue in Federal Court, which was denied on August 2, 2010. On August 16, 2010, BNY Mellon, N.A. filed a Motion to Amend the Court's Order Denying Defendant's Motion for Summary Judgment so that BNY Mellon, N.A. could seek appellate review of the Court's order, which was denied on January 31, 2011.

On February 26, 2010, BNY Mellon, N.A., along with several other BNY entities, filed a Motion for Transfer of Actions to the Southern District of New York Pursuant to 28 U.S.C. 1407 for Coordinated or Consolidated Pretrial Proceedings. BNYM sought transfer and consolidation of this action, along with three other actions pending in different districts across the country (Western District of Washington, Southern District of New York, and Central District of California). Shortly thereafter, BNYM filed a Motion for Protective Order and Motion to Stay Proceedings Pending a Transfer Decision by the Judicial Panel on Multi-District Litigation. Plaintiffs in the four affected cases, including CompSource, opposed the transfer. On May 27, 2010, the United States Judicial Panel on Multi-District Litigation convened a hearing session in Chicago, Illinois and, on June 7, 2010, entered an Order Denying Transfer.

On July 7, 2010, Plaintiffs filed the First Amended Class Action Complaint ("FAC"). The FAC did not add any new claims but added a named plaintiff—the Board of Trustees of the Electrical Workers Local No. 26 Pension Trust Fund; named an additional defendant—The Bank of New York Mellon; and provided additional factual detail regarding Plaintiffs' claims. BNY

Mellon filed a Motion to Dismiss the FAC on August 4, 2010, which the Court denied on January 31, 2011.  On July 15, 2010, the Court entered the Discovery Coordination Protocol, which applied to this Action and *Regence BlueShield, et al. v. BNY Mellon Bank*, N.A., No. 09-CV-618 (RSL) (W.D. Wash.), and ordered the parties in each action to coordinate discovery in good faith in order to eliminate duplicative efforts.  Named Plaintiffs filed the Second Amended Class Action Complaint on February 8, 2011 ("SAC"), which added two named plaintiffs—The Children's Hospital of Philadelphia Foundation and The Children's Hospital of Philadelphia.  On March 4, 2011, BNY Mellon filed its Answer to the SAC.

On March 18, 2011, BNY Mellon filed a motion seeking leave to file a third-party complaint against Asset Consulting Group LLC and the Board of Managers of CompSource.  After the filing of a response and reply, the Court denied this motion on November 21, 2011.

On August 26, 2011, Named Plaintiffs filed their Motion and Memorandum of Law in Support of Class Certification.  On November 8, 2011, BNY Mellon filed its Opposition to Plaintiffs' Motion for Class Certification.  On December 23, 2011, Named Plaintiffs filed their Reply Brief in Further Support of their Motion for Class Certification.  On April 16, 2012, Named Plaintiffs filed a Notice of Supplemental Authorities.  On December 5, 2011, the parties filed a Joint Motion for Status Conference and Hearing.

Over the course of these events, the Settling Parties engaged in two unsuccessful mediation sessions conducted by former Federal Judge, Layn Phillips.  At various times during 2012, the Settling Parties communicated with Judge Phillips regarding settlement possibilities.  Finally, on Sunday, June 3, 2012, the Settling Parties conducted a third mediation session in New York, New York, before Judge Phillips, where the Settling Parties were finally able to reach a non-binding agreement in principle.

Based upon their investigation, research and completion of discovery, Interim Class Counsel concluded that the terms and conditions of the Settlement are fair, reasonable and adequate to Named Plaintiffs and the Class, and in their best interests.  For these reasons and the reasons set forth below, the Court should grant Named Plaintiffs' Motion and enter the proposed Preliminary Approval Order.

## III.   ARGUMENT

### A.   The Court Should Grant Preliminary Approval of the Proposed Settlement

Courts strongly favor settlement as a method for resolving disputes.  *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.,* 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. Colo.,* 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n,* 465 F.2d 1350, 1354 (10th Cir. 1972).  This is especially true in complex class actions such as this.  *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.,* 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements.  FED. R CIV. P. 23(e).  The procedure for review of a proposed class action settlement is a well-established two-step process.  *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009); *see* MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004).  First, the Court conducts a preliminary approval hearing "to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *accord* MANUAL FOR COMPLEX LITIGATION § 1.46, at 53-55.  Once the district court preliminarily approves the settlement, the class is then notified and provided an opportunity to be heard at a fairness hearing concerning the merits of the settlement.  *In re Motor*, 258 F.R.D. at 675; *accord*, 4 Herbert B.

Newberg, NEWBERG ON CLASS ACTIONS § 11.25, at 38 (4th ed. 2002).

Through this unopposed Motion, Named Plaintiffs request the Court take the first step in this process—preliminary approval. "The Court will ordinarily grant preliminary approval where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *In re Motor*, 258 F.R.D. at 675 (quoting *AMA v. United Healthcare Corp.*, 2009 U.S. Dist. LEXIS 45610, 17 (S.D.N.Y. 2009)). "The standards for preliminary approval are not as stringent as those applied for final approval." *In re Motor Fuel*, 258 F.R.D. at 675-76. However, in determining whether the proposed settlement should be preliminarily approved, courts frequently refer to the factors a considered when granting *final* approval. *Id.* at 680-81 ("While the Court will consider these factors in depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well.").

The Tenth Circuit has identified four factors to consider when deciding whether to finally approve a class action settlement:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Lucas*, 234 F.R.D. at 693. As demonstrated below, each of these factors supports the preliminary approval of the Settlement.

1.    *The proposed Settlement is the product of extensive arms-length negotiations between experienced counsel*

When a settlement results from "arms length negotiations between experienced counsel after significant discovery occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas*, 234 F.R.D. at 693; *see also Reed v. Gen. Motors corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.").  Here, the Settlement is the product of extensive arm's-length negotiations between the Settling Parties' experienced counsel after the conclusion of all fact discovery[2]—the same counsel who produced and/or reviewed nearly five million pages of documents and took or defended a total of 58 depositions, which resulted in 16,396 pages of recorded testimony with 1,734 exhibits.  The completion of fact discovery provided the Settling Parties with more than sufficient evidence to allow them to make informed decisions about the strengths and weaknesses of their respective cases.  As a result, the Settling Parties and their lawyers were well prepared for the serious and intelligent negotiations that led to the Settlement.  *See In re Motor Fuel*, 258 F.R.D. at 675-676.

Additionally, courts in this Circuit have found settlements to be fairly and honestly negotiated when "[t]he completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation."[3]  The use of an experienced mediator "in

---

[2]For a detailed description of all discovery conducted in this Action, *see* Declaration of Bradley E. Beckworth in Support of Plaintiffs' Motion for an Order Preliminarily Approving Settlement, Approving Form and Manner of Notice, and Setting Final Fairness Hearing Date ("Beckworth Decl. ") at pp. 23-42, which is attached hereto as Exhibit 2.

[3]*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997); *see also Ashley v. Reg'l Transp. Dist.*, 2008 U.S. Dist. LEXIS 13069, at *15-*22 (D. Colo. Feb 11, 2008) (finding

the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion."[4]  Here, the Settlement resulted from multiple mediation sessions over a two-year period.   Qualified and respected mediator, Layn Phillips, a former United States Federal Judge, facilitated all of these mediations.  Judge Phillips has presided over a number of large, complex class action settlements such as this one.  After separate communications with Judge Phillips, and three live mediation sessions, the Settling Parties were able to reach a non-binding agreement on June 3, 2012.  Clearly, this Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel.  Therefore, the first factor—that the settlement be fairly and honestly negotiated—supports preliminary approval.

### 2.   *Serious questions of law and fact exist*

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits…it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas*, 234 F.D.R. at 693-94 (citing *Wilkerson*, 171 F.R.D. at 284).   The presence of questions of law and fact "tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation."  *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 U.S. Dist. LEXIS 86741, at *31-*41 (W.D. Okla. 2008) (citing *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039, at *16-*18 (D. Colo. 2006)).

---

settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months).
[4] *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *see also D'Amato v. Deutsch Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in…settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In this Action, there are numerous factual and legal issues on which the Settling Parties disagree—issues that ultimately would be decided by this Court or a jury.  To this day, BNY Mellon continues to deny that it committed any act or omission giving rise to any liability or violation of law, and that all damages were caused by an unpredictable intervening cause.  As such, BNY Mellon has entered into this Settlement solely to eliminate the burden, expense, and distraction of further litigation.  *See* Exhibit 1 at 5 (Stipulation).  While Named Plaintiffs strongly believe in their claims and are optimistic regarding their chances at trial, there are a number of hurdles that Named Plaintiffs would have to overcome.  For example, BNY Mellon has presented numerous defenses to Named Plaintiffs' claims on all elements of those claims— liability, causation and damages, each of which Named Plaintiffs would have to overcome if this action were to proceed to trial.  Because serious issues of law and fact remain in dispute, this second factor supports preliminary approval of the Settlement.

### 3. *The value of immediate recovery outweighs the mere possibility of future relief after long and expensive litigation*

The complexity, uncertainty, additional expense, and likely duration of further litigation also support approval of the proposed Settlement.  This factor is based on the premise that the class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *See McNeely*, 2008 U.S. Dist. LEXIS 86741, at *37.  Here, the $280,000,000 Settlement Amount represents a significant and meaningful recovery for the Class without the risk or additional expense of further litigation.  These immediate benefits must be compared to the risk that the Class may recover nothing after summary judgment, trial and likely appeals, possibly years into the future.

While Named Plaintiffs are confident in their ability to prove the claims asserted, they also recognize that liability is far from automatic and the potential obstacles to obtaining a final, favorable verdict. When these uncertainties are compared to the immediate and substantial benefits of the Settlement, it is clear that the Settlement is in the best interest of the Named Plaintiffs and the Class. Therefore, this third factor supports the preliminary approval of the Settlement.

### 4.      *The Parties agree that the proposed Settlement is fair and reasonable*

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 295 (quoting *Marcus v. Kan. Dept. of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002)). "[T]he Court should…'defer to the judgment of experienced counsel who has competently evaluated the strength of his proof.'" *Johnson v. City of Tulsa*, 2003 U.S. Dist. LEXIS 26379, *39 (N.D. Okla. 2003) (quoting *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)). In fact, "[w]hen a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus*, 209 F. Supp. 2d at 1182 (citing *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993) ("Absent evidence of fraud or overreaching, courts consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel.")).

Here, proposed Class Counsel—law firms with considerable experience in complex class action litigation and securities law[5]—have agreed to settle this Action after hard fought litigation

---

[5] *See In Re: Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("The Court…has been considerably impressed, not only by counsel's skill, knowledge of the substantive and procedural law, and sophistication—all of which were consistently evident to the Court—but also by their dedication and commitment to their clients' cause. In short, these

and rigorous arm's-length negotiations and mediations.  Named Plaintiffs have considered (i) the substantial benefits that Named Plaintiffs and the proposed Class will receive from resolution of the Action, (ii) the risks and uncertainties of continued litigation, and (iii) the desirability of permitting the Settlement to proceed according to the terms in the Stipulation.  In light of these considerations, proposed Class Counsel has concluded that the terms and conditions of the Settlement are fair, reasonable and adequate to Named Plaintiffs and the proposed Class, and in their best interests.  Therefore, this final factor supports the Court's preliminary approval of the proposed Settlement.

Because the four factors considered by courts in the Tenth Circuit support the possible *final* approval of the Settlement, and each clearly is satisfied here at the preliminary approval stage, Named Plaintiffs respectfully request the Court grant preliminary approval of the Settlement.

**B.      Certification of the Settlement Class is Proper**

One of the Court's functions in reviewing a proposed settlement before the putative class has been certified is to determine whether the action may be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23").[6]  *See e.g.*, *In re Motor Fuel*, 271 F.R.D. at 278; *Lucas v. Kmart Corp.*, 2006 U.S. Dist. LEXIS 21521, *5 (D. Colo. Mar. 22, 2006).  Trial courts have "considerable discretion" in making class certification decisions.  *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).  The Tenth Circuit defers to a trial court's certification ruling "if it applies the proper Rule 23 standard and its decision falls within the bounds of rationally

_____

lawyers have practiced at the highest levels of professional competency.…" (referring to proposed Class Counsel NPR and KTMC).

[6] Rule 23(a) sets out four prerequisites to class certification, which are referred to as (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  Additionally, Rule 23(b) requires a showing that common questions predominate the dispute and that the class action, as a tool of dispute resolution, is superior to other methods.

available choices given the facts and law involved in the matter at hand." *Id.* However, in the settlement context, courts need not inquire into trial manageability under Rule 23(b)(3)(D). *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 269 (D. Kan. 2010).

Named Plaintiffs move the Court to certify a Class solely for purposes of settlement, consisting of (i) all clients of BNY Mellon's securities lending business that, as of October 1, 2008, held medium term notes issued either by Sigma Finance Inc. or Sigma Finance Corp. through such client's participation in a collective investment pool, (ii) the Texas Permanent School Fund, and (iii) The William and Flora Hewlett Foundation.  Excluded from the Class are (i) participants in the Mellon Capital Fund, (ii) The Regence Group Retirement Plan, Regence Blue Cross Blue Shield of Oregon, Regence Blue Cross Blue Shield of Utah, Regence Blue Shield, Regence Blue Shield of Idaho, Regence HMO Oregon, Asuris Northwest Health, Commencement Bay Life Insurance Company, Healthwise and Regence Life and Health Insurance Company ("Regence"), (iii) Pacific Select Funds, (iv) The Bank of Korea, (v) AP1, (vi) The Bank of Colombia, and (vii) Achmea Schadeverzekeringen N.V., Achmea Verzekeringsholding N.V., Achmea P & L Insurance, Stichting Achmea Zorgverzekeringen Beleggingen ("Achmea").

Certification of this Class for settlement purposes will further the interest of Class Members and BNY Mellon by allowing this litigation to be settled on a class-wide basis. Moreover, as demonstrated below, the relevant requirements of Rule 23 are satisfied.  Named Plaintiffs previously submitted extensive briefing and evidence demonstrating that certification is appropriate under Rules 23(a) and (b)(3), and respectfully incorporate the same as if set forth fully herein.  *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Class Certification ("Plaintiffs' Class Cert. Motion"), Doc. Nos. 398-400; Plaintiffs' Reply Brief in

Further Support of their Motion for Class Certification and to Appoint Class Counsel, Doc. Nos. 435-39.  Therefore, the Court should certify this Class for settlement purposes.

### 1.  **Numerosity**

Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable."  A class as small as 46 is sufficient.  *See Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977); *see also Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 78522, *23-24 (S.D.N.Y. 2010). (certifying class of 76).  Here, there are over 300 potential Settlement Class Members who are geographically dispersed and identified.  Accordingly, numerosity is met.

### 2.  **Commonality**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Of course, "factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist."  *Beer v. XTO Energy, Inc.*, 2009 U.S. Dist. LEXIS 23096, at *10 (W.D. Okla. Mar. 20, 2009); *Heartland Commc'ns, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D. Kan. 1995) (commonality met where contracts were "virtually identical").  Plaintiffs need only show a *single* issue common to all members of the class.  *See DG*, 594 F.3d at 1195; 1 Newberg on Class Actions, § 3.10, at 272-73 (4th ed. 2002).

Here, BNY Mellon entered into securities lending agreements ("SLAs") with all Class Members, giving BNY Mellon discretion to invest cash collateral generated by the securities lending program for the benefit of the proposed Class.  Pursuant to their discretionary authority, BNY Mellon invested in medium-term notes ("MTNs") issued by Sigma Finance Inc. and/or Sigma Finance Corp., which eventually collapsed.  BNY Mellon's decision to make and maintain this investment, and the loss that resulted, form the basis of Named Plaintiffs' claims.

BNY Mellon employed a uniform management strategy for the Sigma MTNs and made no investment decisions for any Class Member based upon an individualized analysis.[7] Additionally, BNY Mellon implemented uniform investment guidelines for the Class.[8]  Were this Action to proceed to trial, the question of whether BNY Mellon complied with its contractual and fiduciary obligations could be determined "in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).  Clearly, there are questions of law and fact common to Class.  As such, the commonality requirement is satisfied.

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  However, "[e]very member of the class need not be in a situation identical to that of the named plaintiff" to meet the typicality requirement. *DG*, 594 F.3d at 1195.  Rather, "[p]rovided the claims of Named Plaintiffs and class members are based on the same legal or remedial  theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198-99.

Here, each Named Plaintiff has the same interest and has suffered the same injuries as all other Class Members as a result of BNY Mellon's decisions to purchase and hold the Sigma MTNs on behalf of the Class.  The claims of the Named Plaintiffs and all Class Members "are based on the same legal and remedial theories and arise from the same pattern of conduct by defendant."  *Arkalon Grazing Ass'n v. Chesapeake Operating, Inc*., 2011 U.S. Dist. LEXIS 35790, at *8 (D. Kan. Mar. 31, 2011).  Moreover, although the Class includes both ERISA and non-ERISA clients, BNY Mellon treated all of them the same.  Thus, Named Plaintiffs' claims are typical of the claims of every Class Member.

---

[7] Plaintiffs' Class Cert. Motion at Ex. V.
[8] *See id.* at Ex. X.

4.  **Adequacy of Representation**

Rule 23(a)(4) requires plaintiffs to show they will fairly and adequately protect the interests of the class.  In the Tenth Circuit, the adequacy requirement is satisfied when (i) neither plaintiff nor its counsel has interests that conflict with the interests of other class members and (ii) plaintiff will prosecute the action vigorously through qualified counsel.  *Chesapeake,* 2011 U.S. Dist. LEXIS 35790, at *8-9.  Both prongs of the adequacy requirement are met here.

First, to defeat certification, a conflict must be fundamental and go to specific issues in controversy; minor conflicts will not suffice.  *Frankhouser v. XTO Energy, Inc.*, 2010 U.S. Dist. LEXIS 133345, at *14-15 (W.D. Okla. Dec. 16, 2010).  Here there are no conflicts, minor or otherwise, between Named Plaintiffs and other members of the Class.  To the contrary, Named Plaintiffs, who suffered the same injury as other Class Members, have had every incentive to vigorously prosecute this Action on behalf of the Class.  Named Plaintiffs have submitted declarations stating that each is willing and able to assume the responsibilities of representing the Class.[9]  Named Plaintiffs' declarations demonstrate they understand the scope of the Class and that no known conflicts exist between them and other members of the Class.  These declarations establish each Named Plaintiff's adequacy.  *See Beer*, 2009 U.S. Dist. LEXIS 23096, at *15-16 (finding plaintiffs' affidavits evidence of adequacy); *see also Naylor Farms v. Anadarko OGC Co.*, 2009 U.S. Dist. LEXIS 127516, at *21-22 (W.D. Okla. Aug. 26, 2009) (same).

Second, Named Plaintiffs have prosecuted this action vigorously through qualified counsel.  In addition to their declarations, Named Plaintiffs have demonstrated their dedication to this matter through participation in all aspects of discovery.  For example, CompSource's CFO and corporate designee, Steve Hardin, testified on multiple days and prepared for over ***70***

---

[9]*See* Plaintiffs' Class Cert. Motion at Exs. QQQ, RRR & SSS.

*hours*.[10]  Similarly, representatives for the Board, the CHOP Trust, and the CHOP Foundation also have participated in extensive written discovery, preparation, and deposition testimony.[11] Such dedicated conduct demonstrates that these Named Plaintiffs understand their duties and obligations to the Class and accept them willingly.

Furthermore, there is no dispute that counsel for Named Plaintiffs is adequate and has successfully prosecuted numerous class actions and other complicated litigation in federal court.[12]  BNY Mellon agrees, and the Court can take judicial notice, that counsel is qualified and experienced to conduct this litigation.[13]  Accordingly, adequacy is met.

### 5.  <u>Predominance</u>

Rule 23(b)(3) requires "questions of law or fact common to class members predominate over any questions affecting only individual members."  Predominance "tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation."  *In re Farmers Ins. Co.*, 2006 U.S. Dist. LEXIS 27290, at *34 (W.D. Okla. Apr. 13, 2006).  Where, as here, Named Plaintiffs' claims stem from a "common nucleus of operative facts," common issues predominate and certification is appropriate.  *Chesapeake,* 2011 U.S. Dist. LEXIS 35790, at *11.

### i.   <u>The ERISA Claims</u>

Common questions easily predominate with respect to the ERISA claims of Named Plaintiffs CHOP Trust and the Board.  These Named Plaintiffs allege BNY Mellon failed to prudently and loyally manage plan assets by purchasing and holding the Sigma MTNs, in

---

[10]*See* Plaintiffs' Class Cert. Motion at Ex. U, 491:5-19. The documents Mr. Hardin reviewed were so voluminous they had to be wheeled in on a dolly.  *See id.* at 312:13-15; 490:4-7.

[11]The Board has provided deposition testimony through at least 4 witnesses plus the testimony of two service providers.  CHOP has also provided testimony through at least 6 witnesses.

[12]*See* Plaintiffs' Class Cert. Motion at Exs. TTT & UUU.

[13]*See* Note 5, *supra.*

contravention of their duties under ERISA.[14]  Judge Scheindlin certified this precise claim in *JPMorgan*, 2010 U.S. Dist. LEXIS 78522, *3, *5.

Certification of this claim is especially appropriate given BNY Mellon's uniform management of the Class as a whole.  ERISA and non-ERISA clients were treated the same,[15] as evidenced by the commingling of Class Members' funds.[16]  Therefore, whether BNY Mellon's uniform conduct violated their ERISA duties is a common, predominating question that will be proven and answered based upon uniform evidence and legal theories.[17]

> ii. *The Common Law Claims*

Common questions also predominate with respect to the common law breach of contract and breach of fiduciary claims brought by non-ERISA Named Plaintiffs CompSource and the CHOP Foundation.  The SLAs of these Named Plaintiffs and the Class are uniform in all material respects concerning investment of cash collateral.  Also, all SLAs incorporate the same investment guidelines and bestow the same fiduciary duties on BNY Mellon.  Therefore, Class Members' common law claims would not be determined by unique SLAs and/or various state laws, and common questions predominate these claims.

> a. **Breach of Contract**—Courts in the Tenth Circuit routinely certify breach of contract class actions.  In *Chesapeake*, the District of Kansas held that predominance existed despite unique contracts and individualized damages issues because the class' claims were "based on the same legal and remedial theories and arise from the same

---

[14]¶¶311-323.

[15]*See* Plaintiffs' Class Cert. Motion at Ex. X & Ex. F, 428:5-429:12.

[16]For example, Archdiocese of Philadelphia and the City of Baltimore Fire & Police Retirement System are non-ERISA plans, yet they are in the ERISA commingled fund. Likewise, Pipefitters Local Union No. 537 Health & Welfare Fund and the Niagara Mohawk Power Corporation are ERISA plans, yet they are in non-ERISA commingled funds. *See* Plaintiffs' Class Cert. Motion at Ex. NNN.

[17]*See* Plaintiffs' Class Cert. Motion at Ex. Y, ¶30.

pattern of conduct by defendant."  2011 U.S. Dist. LEXIS 35790 at *8.  In *Naylor Farms*, a class action involving the underpayment of gas royalties, the Western District of Oklahoma found predominance despite the existence of 350 interest owners for 18 gas wells, with 16 varying gas purchase contracts, and 15 categories of lease royalty provisions.  2009 U.S. Dist. LEXIS 127516 at *13-14.  This finding was based on the fact that, despite these contract differences, defendants treated all royalty owners the same way in calculating royalty payments.  *Id.* Similarly, in *Beer v. XTO Energy, Inc.*, the court held that predominance was present and that "defendant's identical treatment of all royalty owners has made these [lease] differences irrelevant to the question at issue in this case."  2009 U.S. Dist. LEXIS 23096 at *11.  Like the plaintiffs in *Chesapeake*, *Naylor Farms*, and *XTO*, each Class Member here was treated the same pursuant to a uniform management strategy and uniform investment guidelines.  Accordingly, certification is in line with these recent cases from other courts within the Tenth Circuit.

Further, "the general policies regarding contract interpretation and the elements of breach have tended to be uniform from state to state."[18]  Here, the elements of breach of contract are uniform across all states at issue: (1) formation; (2) breach; and (3) damages as a direct result of the breach.  *See* Plaintiffs' Class Cert. Motion at Ex. VVV.  Thus, common questions predominate the breach of contract claims.

First, the question of formation could be answered uniformly because there is no dispute that a contract was formed between BNY Mellon and each Class Member.  Next, whether the contracts were breached also could be answered uniformly because each Class Member's SLA required compliance with uniform investment guidelines.  Whether BNY Mellon complied with

---

[18]*In re: Farmers Med-Pay Litig.*, 229 P.3d 551, 557-59 (Okla. Civ. App. 2009) (application of 14 states' laws did not prevent certification); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 671-72 (S.D. Fla. 1997) ("Whether the [contract] has been breached appears to be a pure and simple question of contract interpretation which should not vary from state to state.").

these guidelines could be answered with a class-wide "yes" or "no."  Accordingly, whether BNY Mellon breached the SLAs will be answered uniformly and no individual defenses regarding Class Members' conduct could be raised.  Last, with respect to the Class Members' damages, each Class Member's "benefit of the bargain" damages[19] are readily ascertainable from BNY Mellon's internal electronic data,[20] which reflects each Class Member's *pro rata* share of Sigma when it collapsed.

In sum, if the Action were to go to trial, the uniform elements either would or would not be satisfied as a whole.  Two of the three elements—formation and damages—can already be answered uniformly for all, as no dispute or material issues exist regarding these elements.  The only element at issue is breach—which could be answered identically for every Class Member.[21] Put simply, "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983).  Thus, common issues would predominate the breach of contract claims.

> ***b.    Breach of Fiduciary Duty***—Finally, common issues predominate with respect to the common law breach of fiduciary duty claims of Named Plaintiffs CompSource and the CHOP Foundation.  Indeed, "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs."  *In re: Williams Co. ERISA Litig.*, 231 F.R.D. 416, 422 (N.D. Okla. 2005) (quoting *In re Ikon*, 191 F.R.D. 457, 465 (E.D. Pa. 2000)).  Here, Class Members' breach of fiduciary duty claims may easily be certified because

---

[19] Nearly all states follow the "benefit of the bargain" rule, which places the injured party in as good a position as he would have been in had the contract been performed.

[20] *See* Plaintiffs' Class Cert. Motion at Ex. NNN; *see also id.* at Ex. D, 194:3-197:2 (same formula for determining Sigma exposure applies to "every account in every pool").

[21] Plaintiffs' Class Cert. Motion at Exs. Y, ¶30(e) & PPP, ¶27.

BNY Mellon's conduct was uniform as to *all* Class Members. The fiduciary obligations of prudence and loyalty that arise under common law are closely analogous to those that arise under ERISA. Indeed, the elements for breach of fiduciary duty under ERISA and common law are virtually identical. *Compare JPMorgan*, 2010 U.S. Dist. LEXIS 78522, *21 *with* Plaintiffs' Class Cert. Motion at Ex. WWW.

Just like the contract claim, if the Action proceeded to trial class-wide proof could be used to satisfy each element of the common law breach of fiduciary duty claim. First, the question of whether BNY Mellon owed a fiduciary duty to each Class Member could be answered for the Class as a whole—each Class Member, by definition, entered into an SLA with BNY Mellon, which gave BNY Mellon complete discretionary authority over the Class Members' cash collateral at all times.[22] Moreover, BNY Mellon has repeatedly agreed that they were fiduciaries.[23] Next, whether BNY Mellon breached their fiduciary duties also could be answered uniformly across the Class. Again, all Class Members claim BNY Mellon breached their fiduciary duties based on the same factual and legal theory, as all Class Members were treated exactly the same. Finally, the measure of damages for all Class Members' common law breach of fiduciary duty claims would be uniform, as the Class' damages are readily ascertainable, formulaic, and could be determined through BNY Mellon's internal data.[24] Accordingly, common issues would predominate with respect to the common law fiduciary duty claims as well.

### 6.  **Superiority**

Rule 23(b)(3) ensures that "a class action is superior to other available methods for fairly

---

[22]Plaintiffs' Class Cert. Motion at Exs. C, 84:13-85:22 & A, 49:14-50:20.
[23]*Id.* at Exs. I, 84:9-84:19; 94:15-95:15; A, 61:14-61:21; L, 19:4-19:13; H, 141:3-141:19; C, 87:5-88:5; G, 62:19-65:22; & CC.
[24]*See id.* Ex. XXX

and efficiently adjudicating the controversy."  The matters pertinent to a finding of superiority include (1) the class members' interests in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the likely difficulties in managing a class action.  However, "[i]n deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)."  *In re Motor Fuel*, 271 F.R.D. at 269; *see also Lucas*, 2006 U.S. Dist. LEXIS 21521, *15.

Superiority is easily met here.  No Class Member has filed an individual action.  As Judge Scheindlin noted in *JPMorgan*, Class Members may actually have a "strong *dis*incentive to initiate individual lawsuits because they may not be willing to sue their securities custodian with whom they have active ongoing relationships."  2010 U.S. Dist. LEXIS 78522, *49.  Moreover, the relative resources available to litigate an individual action against a huge, nationwide bank like BNY Mellon are grossly disproportionate.  Further, because this case has been litigated in this Court from its inception, concentrating the litigation in this forum is desirable.  Therefore, a class action is the superior vehicle in which to bring the Class' claims.

C.    **The Proposed Notice to the Class is Adequate**

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Additionally, Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  In terms of content, a settlement notice  "need only be reasonably calculated, under all of the circumstances, to apprise

the interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "The hallmark of the notice inquiry…is reasonableness." *Lucas*, 234 F.R.D. at 693-96 (quoting *Sollenbarger v. Mountain States Tel. and Tel. Co.*, 121 F.R.D. 417, 436 (D.N.M. 1988)).

Named Plaintiffs have submitted to the Court for approval the Notices of Proposed Settlement of Class Action Litigation, Final Approval Hearing, and Motion for Attorneys' Fees, Reimbursement of Expenses and Named Plaintiffs' Case Contribution Awards (the "Notice"), attached to the Stipulation as Exhibit B.   Named Plaintiffs propose that the Settlement Administrator shall initiate dissemination of notice by sending first-class mail a copy of the Notice to the last known mailing address of each Class Member within thirty (30) calendar days of the entry of the Preliminary Approval Order.  By that same date, the Notice will be posted on a pre-existing website dedicated to this litigation established by Interim Class Counsel, along with other documents related to the Settlement and all associated exhibits.  In the event that any Class Member's initial mailings are returned, the Settlement Administrator shall use all reasonable secondary efforts to deliver the Notice to such Class Members.

In accordance with Rule 23(c)(2)(B), the proposed Notice will fully inform Class Members about the Action, the proposed Settlement and the facts they need to make informed decisions about their rights.  Specifically, the Notice will describe in plain English: (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) Plaintiffs' Counsel's intent to request attorneys' fees, reimbursement of expenses and case contribution awards; (iv) the procedure and timing for objecting to the Settlement; (v) the procedure and timing for Domestic Class Members to request exclusion; (vi) the procedure and

timing for Foreign Class Members to participate in the Class and Settlement benefits; (vii) the date and place for the final approval hearing; and (viii) the procedure for receiving additional information.  The Notice will provide Class Members with a toll-free number for Class Counsel, an email address for Settlement-related inquiries, and a URL address for the dedicated Settlement website where Class Members may obtain further information.  This content is reasonably calculated to apprise the interested parties of the pendency of the Settlement and afford them an opportunity to object.  The form and manner of the proposed Notice meets the requirements of both Rule 23 and due process.  Therefore, the Court should approve the Notice.

## IV.   APPOINTMENT OF THE GARDEN CITY GROUP AS SETTLEMENT ADMINISTRATOR IS PROPER

To accomplish the dissemination of the Notice and process the claims made in response to the Notice, Interim Class Counsel respectfully requests that the Court appoint the Garden City Group as the Settlement Administrator.

The Garden City Group is a leading class action administration company that has handled many complex class action settlements.[25]  The undersigned counsel are confident that The Garden City Group will properly administer the notice and claims process approved and ordered by the Court.

## V.   APPOINTMENT OF WELLSFARGO BANK, N.A. AS ESCROW AGENT IS PROPER

Additionally, Interim Class Counsel respectfully requests that the Court appoint WellsFargo Bank, N.A. as the Escrow Agent.

WellsFargo Bank, N.A. has acted as the Escrow Agent in numerous complex class action settlements and has significant experience in these matters.  Interim Class Counsel are confident

---

[25] More information about the Garden City Group can be found at its website: http://www.gcginc.com/

that WellsFargo Bank, N.A. will properly perform the duties of Escrow Agent as ordered by the Court.

## VI.    CONCLUSION

For all the foregoing reasons, Named Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, attached to the Stipulation as Exhibit A, which, *inter alia*, (1) preliminarily approves the proposed Settlement; (2) preliminarily certifies the Class for settlement purposes only; (3) appoints Named Plaintiffs as representatives of the Class; (4) appoints Nix, Patterson & Roach, LLP and Kessler, Topaz, Meltzer & Check, LLP as Class Counsel; (5) approves the form and manner of the Notice proposed by Named Plaintiffs; (6) appoints The Garden City Group as Settlement Administrator; (7) appoints WellsFargo Bank, N.A. as Escrow Agent; (8) sets a date and time for the hearing regarding final approval of the Settlement and Class Counsel's application for attorneys' fees and reimbursement of expenses; and (9) grants any other relief to be decided by the Court.

Dated July 6, 2012

/s/ Michael Burrage
Michael Burrage, OBA No. 1350
Simone Gosnell Fulmer, OBA No. 17037
WHITTEN BURRAGE
1215 Classen Drive
Oklahoma City, OK 73103
Telephone (405) 516-7800
Facsimile  (405) 516-7859
Of Counsel

NIX, PATTERSON & ROACH, LLP
Bradley E. Beckworth, OBA Bar No. 19982
Jeffrey J. Angelovich, OBA No. 19981
Brad E. Seidel, Texas Bar No. 24008008
Susan Whatley, Texas Bar No. 24047420
Amanda Whatley Lafferty, Texas Bar No. 24072196
205 Linda Drive
Daingerfield, TX 75638
Telephone (903) 645-7333
Facsimile  (903) 645-4415
Lead Counsel for Plaintiffs and the
Proposed Class

ROBINETT & MURPHY
Lawrence R. Murphy, Jr., OBA No. 17681
Pansy Moore-Shrier, OBA No. 20289
624 S. Boston, Suite 900
Tulsa, OK 74119
Telephone (918) 592-3699
Facsimile  (918) 592-0963
Liaison Counsel for Plaintiffs and the
Proposed Class

KESSLER TOPAZ MELTZER & CHECK, LLP
Joseph H. Meltzer, Pennsylvania Bar No. 80136
Sean M. Handler, Pennsylvania Bar No. 86659
Sharan Nirmul, Pennsylvania Bar No. 90751
Peter H. LeVan, Jr., Pennsylvania Bar No. 83456
280 King of Prussia Road
Radnor, PA 19087
Telephone (610) 667-7706
Facsimile (610) 667-7056
Of Counsel

LITTLE, LITTLE, LITTLE, WINDEL,
   OLIVER, LANDGRAF & GALLAGHER, PLLC
Dan Little, OBA No. 5462
Little Building
202 West Lillie Blvd.
P.O. Box 618
Madill OK 73446
Telephone (580) 795-3397
Facsimile  (580) 795-5072

*Of Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, July 6, 2012, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jeffrey J. Angelovich, jangelovich@npraustin.com, lbaldwin@npraustin.com
Amanda Whatley Lafferty, amandalafferty@nixlawfirm.com
Brad Beckworth, bbeckworth@nixlawfirm.com, shelley@nixlawfirm.com,
    shannon@nixlawfirm.com
Carlos M. Sires, csires@bsfllp.com
Dan Little, dan@littlelaw.com, tosha@littlelaw.com
Brad Seidel, bradseidel@nixlawfirm.com, monatucker@nixlawfirm.com
Weldon Stout, weldon@wsfw-ok.com, lynne@wsfw-ok.com
Susan Whatley, susanwhatley@nixlawfirm.com
Ron Wright, ron@wsfw-ok.com, marsha@wsfw-ok.com
Jonathan Sherman, jsherman@bsfllp.com, mfelder@bsfllp.com
Patrick M. Ryan, pryan@ryanwhaley.com, jmickle@ryanwhaley.com, shobby@ryanwhaley.com
Phillip G. Whaley, pwhaley@ryanwhaley.com, jmickle@ryanwhaley.com,
    shobby@ryanwhaley.com
Michael Burrage, mburrage@whittenburragelaw.com, cmccoy@burragelaw.com,
    docketing@whittenburragelaw.com
Simone Gosnell Fulmer, sfulmer@whittenburragelaw.com
Lawrence R. Murphy, lmurphy@robinettmurphy.com, aphillips@robinettmurphy.com
Melissa B. Felder, mfelder@bsfllp.com
Pansy Moore-Shrier, pmoore-shrier@robinettmurphy.com, aphillips@robinettmurphy.com,
    scottom@robinettmurphy.com
Sharan Nirmul, snirmul@ktmc.com
Edward W. Ciolko, eciolko@ktmc.com, kmarrone@ktmc.com, lloper@ktmc.com,
    pleadings@ktmc.com
Sean M. Handler, shandler@ktmc.com, ecf_filings@ktmc.com
Joseph H. Meltzer, jmeltzer@ktmc.com, kmarrone@ktmc.com, lloper@ktmc.com,
    pleadings@ktmc.com
Peter H. Levan, Jr., plevan@ktmc.com, jwotring@ktmc.com, kmarrone@ktmc.com,
    lloper@ktmc.com, rmuchnick@ktmc.com, sbraden@ktmc.com, tgraden@ktmc.com
Scott E. Gant, sgant@bsfllp.com

I hereby certify that on July 6, 2012, the Clerk of Court using the ECF System for filing, will transmit a Notice of Electronic Filing, based on the records currently on file, to the following who are not registered participants of the ECF System:

Damien Marshall, dmarshall@bsfllp.com
Joshua I. Schiller, jischiller@bsfllp.com
Joshua P. Mayer, jmayer@bsfllp.com

<i>/s/</i> Michael Burrage