THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA



FILED
SEP - 6 2012
WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____ Deputy Clerk

| | |
|---|---|
| COMPSOURCE OKLAHOMA, BOARD OF TRUSTEES OF THE ELECTRICAL WORKERS LOCAL NO. 26 PENSION TRUST FUND, in its capacity as a fiduciary of the Electrical Workers Local No. 26 Pension Trust Fund, CHILDREN'S HOSPITAL OF PHILADELPHIA FOUNDATION, and CHILDREN'S HOSPITAL OF PHILADELPHIA, individually and in its capacity as fiduciary of the Children's Hospital of Philadelphia Defined Benefit Master Trust, on behalf of themselves and all others similarly situated, § § § § § § § § § § § § § § § § § | |
| *Plaintiffs*, § | Case No: CIV 08-469-KEW |
| v. § § | |
| BNY MELLON, N.A. and THE BANK OF NEW YORK MELLON, § § § | |
| *Defendants*. § | |

**DECLARATION OF FORMER UNITED STATES DISTRICT COURT JUDGE
LAYN R. PHILLIPS REGARDING APPROVAL OF SETTLEMENT
AND REQUEST FOR ATTORNEYS' FEES**

I, Layn R. Phillips, declare as follows:

1. I, Layn R. Phillips, am a partner with the law firm of Irell & Manella LLP. I am a member of the bars of Oklahoma, Texas, California and the District of Columbia, as well as the United States Courts of Appeals for the Ninth, Tenth, and Federal Circuits. I earned my bachelor of science in economics, as well as my J.D., from the University of Tulsa. I also completed two years of L.L.M. work at Georgetown University Law Center in the area of economic regulation of industry.

2. Upon completion of my formal education, I served as an Assistant United States Attorney in the Central District of California from 1980 to 1983. As a United States Attorney, I personally tried many cases and oversaw the trial of numerous other cases. While serving as a

United States Attorney, I was nominated by President Reagan to serve as a United States District Court Judge for the Western District of Oklahoma in the Oklahoma City Division. During my tenure as a Federal Judge, I presided over trials in all three Districts of the state (Northern, Western and Eastern) and sat by designation on the United States Court of Appeals for the Tenth Circuit. I also presided over cases in Texas, New Mexico and Colorado. While on the bench, I presided over a total of more than 140 federal trials. I left the federal bench in 1991 and joined Irell & Manella LLP shortly thereafter.

3. In addition to litigating cases, I devote a considerable amount of my professional time to serving as a mediator and arbitrator in connection with large, complex cases such as this matter. I have successfully mediated numerous complex commercial cases, including well over a hundred complex class action and securities litigation matters.

4. In addition to my experience as an attorney, former Federal Judge and mediator, I also have experience mediating complex securities lending matters other than this one. I successfully mediated the *AFTRA v. JPMorgan* securities lending litigation in the Southern District of New York presided over by Judge Scheindlin. That case also involved medium term notes issued by Sigma and similar theories and claims as those at issue in this case. I mediated the *AFTRA* litigation over a period of two years and reviewed many of the relevant pleadings, transcripts and orders at issue in that case, including the pre-trial orders issued less than two weeks prior to jury selection. Additionally, I recently successfully mediated a complex arbitration matter regarding a securities lending matter between two sophisticated commercial entities in a process that included a multi-day evidentiary presentation.

5. The settlement negotiations in this case were hard fought and at arm's-length at all times. The Parties' first mediation session was conducted in New York, New York on February 2, 2009. Prior to the mediation session, I required the Parties to submit extensive mediation briefs to me, which I reviewed and analyze prior to the mediation. During the mediation process, the Parties made presentations regarding their respective positions and met with me privately. This initial mediation session was not successful.

2

6.     For the next year and a half, I communicated with Class Counsel from Nix, Patterson & Roach LLP and Kessler Topaz Meltzer & Check, LLP, and Defense Counsel from Boies, Schiller & Flexner, LLP, regarding the status of the case, read material orders and pleadings, and kept abreast of the procedural and substantive posture of the litigation.

7.     On May 24, 2010, I presided over a second in-person mediation session in New York, New York. The Parties submitted additional briefing to me prior to the mediation session. The second in-person mediation session was not successful.

8.     Subsequent to the second in-person meditation session, I continued to communicate with Class Counsel and Defense Counsel regarding the case and continued to discuss the strengths and weaknesses of the Parties' claims and defenses.

9.     Throughout the remainder of the litigation, I participated in numerous telephonic and email sessions with the Parties in a continued effort to assist them in reaching a resolution to this litigation. I consulted with the Parties at various stages in the proceedings, such as after the JPML's denial of Defendants' motion to coordinate proceedings and transfer this action to the Southern District of New York, this Court's rulings on key substantive motions, and after certain depositions and discovery events. I carefully read many of the Court's orders, deposition transcripts, and certain of the Parties' litigation briefs. Throughout this process, the Parties continued to litigate this Action vigorously and to prepare the case for trial.

10.    In April 2012, I began to engage in regular conversations with counsel for both sides in an effort to resolve this matter prior to jury selection. I unsuccessfully attempted to schedule in person mediation sessions in New York during April and May. In an effort to help the Parties find some common ground upon which to facilitate a settlement, I decided to help the Parties work toward a resolution regarding key non-monetary components of a settlement and potential deal terms. Toward that end, I directed the parties to meet and confer regarding certain deal terms during May and held a telephonic session on May 15, 2012. At the close of the session, I directed the Parties to continue to meet and confer on the remaining terms over the next week in hopes that they could build upon some of these initial discussions. I also continued

to talk with both sides, independently and confidentially, in an effort to determine whether there was a range to which each side might agree to attempt to settle this matter.

11. On May 23, 2012, I made a recommendation to attempt to move the parties to a range where settlement might be achievable. This recommendation suggested that each side move to a specified monetary range that I thought was fair and reasonable based on my neutral evaluation of the case and the risks facing both sides at that point in time. It also recommended that each side make certain concessions regarding certain non-monetary deal points. I reached this number in part based on my review and consideration of the orders issued by the Court, the evidence and arguments offered by both sides, my experience mediating the *AFTRA* litigation and familiarity with the pre-trial issues in that case that might be relevant in this case, and also taking into account the substantial risks to both sides that the future litigation landscape presented. I was nonetheless mindful that the settlement range I proposed was one to which both sides would have difficulty moving, and that it was quite possible that one or both sides would reject the proposal. The recommendation was made to the Parties on a double-blind basis, such that neither party would know if the other party had accepted or rejected the proposal unless both sides agreed to accept it.

12. The Parties agreed to accept my recommendation to move within this range. I conducted a third in-person mediation session on Sunday, June 3, 2012. At the close of the June 3rd session, Counsel for the Parties agreed to a non-binding settlement in principle, subject to the necessary client and board approvals required by either side. From my experience and personal involvement as the mediator for this case, I observed first-hand that the Parties engaged in hard—and often bitterly—fought litigation and negotiation. It is my opinion that the settlement is fair and reasonable and I strongly support its approval in all respects.

13. The settlement was the product of extensive arm's-length negotiations conducted after three years of aggressive litigation. There was no collusion whatsoever in reaching the terms of the settlement. I believe it was in the best interests of the Parties and the Class that they avoid the burdens and risks associated with taking a case of this size and complexity to trial, and

4

that they agree upon the settlement now before the Court.

14.     The settlement obtained is particularly fair, adequate and reasonable under the circumstances of this case because it provides a very substantial recovery for the Class, especially when measured against the significant obstacles standing in the way of achieving a resolution of Plaintiffs' claims.

15.     Based upon my experience in this case and other complex commercial class actions as a lawyer, mediator and former Federal Judge, as well my involvement with the Parties and counsel in this case, I am of the opinion that the settlement amount of $280 million is a fair and reasonable result. I do not believe that Class Counsel and the Class Representatives could have obtained more money for the Class without going to trial and, even then, faced substantial risks that a jury would award less, if any award at all. Defendants argued that they were not liable and that any losses suffered by Plaintiffs and the Class were the result of the collapse of the world's financial markets generally, and Lehman Brothers specifically, which would have been advanced as intervening causes at trial. Depending on which side's damages model was accepted by the Court and/or jury at trial, the $280 million settlement could easily exceed what Plaintiffs could have recovered at trial. This case also presented numerous appellate issues for both sides, which could have caused this case to drag on for years, with a verdict providing no certainty or finality to either side. The settlement here ensures that the Class will receive certain money without being exposed to the risks of trial and appeal.

16.     At all times, the named Plaintiffs and Class Counsel diligently represented the Class. I understand that Class Counsel are seeking a fee award of 25 percent of the settlement amount and for reimbursement of all reasonable expenses they advanced to litigate this case. I believe such a request to be fair and reasonable. In my experience, attorneys' fees in complex class actions such as this case are generally awarded on a percentage basis and the benchmark is twenty-five percent (25%). I also believe 25% is the market rate for this case as evidenced by the fact that the three named Plaintiffs are all sophisticated institutional investors who agreed to

this fee at the outset of their involvement in this case, as well as the fact that the named Plaintiffs agreed to this same percentage in *AFTRA*, which was approved by Judge Scheindlin.

17. For over two years, I worked with Plaintiffs' Counsel and Defendants' Counsel in ongoing attempts to reach a settlement. In addition to this case, I have served as a mediator for other cases prosecuted by Nix, Patterson & Roach, LLP and Kessler Topaz Meltzer & Check, LLP on the plaintiff side, as well as cases prosecuted by Boies, Schiller & Flexner LLP on both the plaintiff and defense side. I also have previously worked with Michael Burrage, former Chief Judge of the Eastern District of Oklahoma, who served as one of Plaintiff's Counsel in this case. I can attest that the attorneys working on this matter for both sides are outstanding lawyers who worked with a high level of skill, efficiency and creativity on behalf of their clients. Indeed, the advocacy on both sides was outstanding. Further, Class Counsel litigated this matter on an entirely contingent basis and advanced all reasonable litigation costs for over three years with no recovery and no revenue from their work. Despite these risks, they continued to push for the best possible settlement for the Class, even though could have settled this case for less money. And, Class Counsel was willing to try this case, and face the risk of losing with no chance to recover their expenses or for their labor, if they were not able to achieve a fair and reasonable result for the Class.

18. In sum, I believe that the settlement is fair, reasonable and a result of Class Counsel's experience, reputation and ability. It is my opinion that the proposed settlement was reached at arm's-length, is fair and reasonable, and should be approved. It also is my opinion that the requested fee award is in line with the amounts approved by courts in the Eastern District of Oklahoma and the Tenth Circuit and is fair and reasonable.

*/s/ Layn R. Phillips*

Layn R. Phillips
Former United States District Judge
September 5, 2012

6